UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DEBORAH PROBERT,**

Case No.

Plaintiff,

vs.                                                    Hon.

**MUBEA, INC.,**

Defendant.

_____/

Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*

_____/

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

There is no other civil action pending in
this Honorable Court or any other Court
arising out of the same transaction and
occurrence.

**NOW COMES** Plaintiff, **DEBORAH PROBERT**, for her Complaint against

Defendant Mubea, Inc., stating the following:

## INTRODUCTION

1.      Plaintiff Deborah Probert was employed with Defendant Mubea, Inc. as a

Senior CAD Engineer until she was terminated shortly after making protected

complaints of unequal job opportunities and the discrimination she was receiving as an

older woman in the company, as well as Mubea's mishandling of regulations and safety protocols during Michigan's Covid-19 pandemic and shutdown. Throughout Plaintiff's time with Mubea, Inc., she was denied opportunities while younger male comparators with objectively less experience and education were selected for desirable management positions.   Additionally, Plaintiff, a Covid-19 "long hauler," had serious concerns regarding Mubea's handling of sanitation and remote work. Ultimately, Plaintiff reported these protected concerns internally and to public bodies. Plaintiff was terminated shortly after these complaints without cause.

Within this complaint, Plaintiff alleges that she was terminated in violation of her rights afforded under Michigan's Elliott-Larsen Civil Rights Act, People with Disabilities Civil Rights Act, Whistleblower Protection Act, and in violation of public policy.

## **PARTIES**

2.     Plaintiff Deborah Probert is an individual who resides in the state of Michigan.

3.     Defendant Mubea, Inc. is a German foreign profit corporation incorporated under the laws of the State of Delaware. ***Exhibit A*** Mubea, Inc.'s primary place of business in the U.S. is 6800 Industrial Rd. Florence, KY 41042.

4.     At all times relevant herein, Defendant acted by and through its agents and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## JURISDICITON AND VENUE

5.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction).

6.     Plaintiff Deborah Probert is a resident of the State of Michigan.

7.     Defendant Mubea, Inc. is a foreign profit corporation incorporated under the laws of the State of Delaware. *Exhibit A* Mubea, Inc. is headquartered in Attendorn, Germany and its primary place of business in the U.S. is 6800 Industrial Rd. Florence, KY 41042. *Exhibit A*

8.     All officers and directors for Defendant Mubea, Inc. are located in the State of Kentucky. *Exhibit A*

9.     The majority of Defendant Mubea, Inc.'s US operations are located in the State of Kentucky.

10.     Venue is proper in this Court because the location of the Plaintiff is within the Eastern District of Michigan and the actions giving rise to this lawsuit occurred within the Eastern District of Michigan.

11.     At all times relevant hereto, Plaintiff performed work for Defendant in the Eastern District of Michigan.

12.     A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Eastern District of Michigan.

13.     The amount in controversy exceeds $75,000, exclusive of costs, interests, and attorney fees.

## GENERAL ALLEGATIONS

14.     Plaintiff Deborah Probert ("Plaintiff") is a member of protected classes as she is a woman, above the age of sixty, with a disability.

15.     Plaintiff is a skilled engineer with a degree in program management and prior experience as a project execution engineer. Plaintiff also holds nineteen patents.

16.     Plaintiff began her work relationship with Defendant Mubea, Inc. ("Mubea" or "Defendant") as a contract employee on December 4, 2019.

17.     Mubea is a global corporation headquartered out of Attendorn Germany. In the US, Mubea's primary place of business in the U.S. is Florence, KY. All of Mubea's US upper-management and directors are based out Kentucky.

18.     Plaintiff worked in Mubea's engineering operation based out of Auburn Hills, MI.

19.     The majority of Plaintiff's coworkers and supervisors were younger men.

20.     Around the same time Plaintiff was hired in as a contract employee, Mubea hired a lesser qualified younger male, John Jamens ("Jamens"), directly as a Program

Manager while Plaintiff was told there were no open positions other than CAD operators.

21.     When Mubea announced the hiring of Jamens, they concealed he was hired as a Program Manager allegedly to avoid "office politics."

22.     Plaintiff excelled in her role at Mubea and routinely outperformed her younger male counterparts, as well as her supervisors.

23.     Early into her employment, Plaintiff streamlined Mubea's design process and eliminated lengthy and complicated surface development which was slowing down the designs.

24.     Plaintiff taught her coworkers how to properly add parts into an assembly instead of the sub-grade work which was previously being performed.

25.     Within the first few months at Mubea, Plaintiff's work directly caused the company to land a billion dollar letter of intent with Ford relating to cold plates.

26.     Despite her unparalleled work, Plaintiff was routinely passed over for salaried and management positions for younger males.

<u>The Covid-19 pandemic and Plaintiff's experience with Covid-19</u>

27.     On March 10, 2020, the Michigan Department of Health and Human Services identified the first two presumptive-positive cases of COVID-19 in Michigan. On that same day, Michigan's Governor Whitmer issued *Executive Order 2020-4* declaring a state of emergency across the state of Michigan.

28.     Beginning March 17, 2020, Plaintiff and her family members began exhibiting symptoms of Covid-19 and that she is needs to quarantine with her family.

29.     Plaintiff did in fact contract Covid-19. Ultimately, Plaintiff would prove to be a Covid "long hauler" who suffered from regular breathing problems indefinitely. Plaintiff requires breathing treatments up to a few times a week and occasionally requires steroids.

30.     Plaintiff's long haul Covid-19 breathing issues affect the major life function of breathing.  However, she was able to provide the essential duties of her job with or without an accommodation.

31.     Plaintiff's long haul Covid-19 breathing symptoms amount to a disability or reasonably were perceived as a disability.

32.     Around noon on March 23, 2020, Gov. Whitmer issued *Executive Order 2020-21* ("EO 2020-21") which explicitly ordered non-essential employees to cease working and that any position which *may* be performed through telecommunication *must* be performed through telecommunication.

33.     EO 2020-21 explicitly ordered that "no person or entity shall operate a business or conduct operations that require workers to leave their homes or places of residence except to the extent that those workers are necessary to sustain or protect life or to conduct minimum basic operations." The Order continued stating that it "must be

construed broadly to prohibit in-person work that is not necessary to sustain or protect life." Thus, activities that can be performed at home must be performed at home[1].

34.      Approximately, March 25, 2020, Plaintiff was informed that contract workers, such as Plaintiff, were not being allowed to work from home and were being laid off.

35.      Had Plaintiff been a direct hire with Mubea like Jamens, she would not have been laid off.

### Plaintiff is recalled due to the incompetence of her younger male colleagues

36.      On July 7, 2020, Plaintiff was recalled from her layoff.

37.      Upon her return, Plaintiff notified Mubea HR Generalist Jennifer Kirk ("HR Kirk") that she is a Covid-19 longhauler and, as a result has a lingering cough. However, that the cough is not contagious but damage due to Covid-19.

38.      It was also obvious to Plaintiff's coworkers that she was struggling to breath and also occasionally coughed due to her long haul Covid-19 symptoms. Additionally, coworkers were aware that Plaintiff would go to her car at lunch to do her breathing treatments.

39.      Quickly, it was apparent to Plaintiff that the reason she was recalled was because the inexperienced younger male, Jamens, could not complete the work.

---

[1] EO 2020-21 has been superseded by subsequent Executive Orders modifying some of its individual requirements. However, the applicable passages existed at all times relevant to the facts of this lawsuit. Michigan's work from home requirement was in place until it was ultimately lifted on May 24, 2021.

40.     From July 7, 2020, to around October 2020 Plaintiff worked large amounts of overtime, sometimes 16-18 hour days, to cover the deadlines her male coworkers had failed to meet.

41.     During this period, Plaintiff was informed by a cleaning lady that Mubea had reduced its cleaning and sanitation of the only two bathrooms to one day a week.

42.     Plaintiff also observed numerous other violations of health regulations and recommendations including employees not wearing masks at their desks or removing them when they talk.

43.     In August 2020, there was an outbreak of Covid-19 at Mubea.

44.     In October 2020, Plaintiff's work led to another *billion* dollar contract with Ford.

> <u>Plaintiff is hired into a CAD Engineer position while a younger male with objectively inferior credentials is hired in as Plaintiff's supervisor</u>

45.     In October 2020, Plaintiff was informed of an opening as a CAD Engineer and told to apply.  Around the same time, Austin Loutzenhiser ("Loutzenhiser"), a male in his twenties (approx. 25 years old) with much less experience and credentials as Plaintiff, applied for the same position as Plaintiff.

46.     On October 12, 2020, Plaintiff was hired in as a Senior CAD Engineer.

47.     Unlike Plaintiff, Mubea hired in Loutzenhiser as a Project Engineer— Plaintiff's supervisor.

48.     Plaintiff was never even notified about the potential Project Engineer position despite her superior credentials to Loutzenhiser.

49.     On information and belief, Loutzenhiser only held a degree in mechanical engineering. Further, the Program Manager position was Loutzenhiser's second job out of college and he had no previous supervisory experience prior to becoming Plaintiff's supervisor.

50.     Comparatively, Plaintiff holds a degree in program management, was previously a project execution engineer at Lear Corp. for around three years.

51.     Similar to the hire of Jamens, when Plaintiff and Loutzenhiser were hired, Mubea concealed their education and experience. The move was clearly done to avoid highlighting the clear discrimination in the job selection.

52.     In November 2020, Mubea's Director of New Body Operations for North America, Tom Stellmach (male; approx. 29 years old)("Stellmach"), notified Plaintiff that she could work from home indefinitely due to her age and disability. As such, Plaintiff began working remotely as of November 2020.

53.     On December 21, 2020, Plaintiff's sister passed away of Covid-19.

54.     Following the death of her sister, Plaintiff notified Loutzenhiser that she did not believe that she would survive a second bout with Covid-19 because of her health and the fact her sister died, Loutzenhiser brazenly responded that, if she died, he would replace her with two people for half the pay.

55.    Loutzenhiser also made extremely insensitive age related comments towards Plaintiff. In one instance, Loutzenhiser noted that his parents were "old and stupid" knowing that Plaintiff was *older* than his parents.

56.    Notably, Loutzenhiser instructed Plaintiff to perform personal work for him outside of Mubea and the scope of her job duties. When Plaintiff refused to perform the outside work, he was hostile to her.

57.    On March 25, 2021, after Plaintiff refused to perform personal outside work for Loutzenhiser, Plaintiff was told that she was required to come into the office moving forward despite Plaintiff completing all work and meeting all deadlines during the period she worked from home.

Plaintiff's protected complaints of discrimination and unsafe work practices

58.    After, Plaintiff notified Stellmach and HR Kirk that she felt it was still unsafe to return to the workplace as Mubea had reduced the cleaning down to one day a week and because she was high risk. Further, Plaintiff had yet to receive a vaccination despite her efforts.

59.    Plaintiff also complained to Stellmach and HR Kirk that she was being discriminated against by Loutzenhiser as an older woman and due to her health condition. Further, that Loutzenhiser was not qualified to be a supervisor. Plaintiff questioned why Mubea promoted a younger man with no experience over her.

60.     As a result of her complaints against Loutzenhiser, Loutzenhiser was investigated for conflict of interest and removed as Plaintiff's supervisor.

61.     After, Plaintiff began receiving work from Ibrahim Libdeh ("Lidbeh"). During this period, Plaintiff continued to work from home while meeting all of her deadlines. At no point was there any discussion of performance issues or her job being in jeopardy.

62.     Lidbeh was also a younger male employee who was hired for a Program Manager position during Plaintiff's time with Mubea.

63.     On March 29, 2021, HR Kirk emailed *both* Plaintiff and Loutzenhiser noting the previous conversation Plaintiff had with HR Kirk. Plaintiff reasonably felt betrayed. Plaintiff emailed Kirk and HR Director Deborah Ramirez ("HR Ramirez") (located in KY) notifying them that she had "filed a harassment charge against [Loutzenhiser]" and felt the email with him cc'd was both a betrayal and a reprimand. Further, that Mubea had left her under the authority of a young man who was threatening her.

64.     On March 30, 2021, Plaintiff sent another email to HR Ramirez. Within this email, Plaintiff questioned why this young inexperienced man was hired to supervise her when she had superior qualifications.

65.     Plaintiff had contacted the Equal Employment Opportunity Commission ("EEOC") to file a charge of discrimination against Mubea on the basis of age, gender, and disability.

66.     During a discussion with Libdeh, Plaintiff notified him that she believed she had a valid EEOC discrimination claim for Mubea's failure to promote her and her treatment.

67.     Between March 26-29, 2021, Plaintiff received multiple emails informing her the Mubea employees had tested positive for Covid-19.

68.     During the week of March 30, 2021, Plaintiff had a meeting with HR Ramirez to discuss her concerns with insufficient sanitation in light of the ongoing covid-19 pandemic.

69.     Around a week later, Plaintiff had another meeting with Mubea Director of Finance, Shane McConnell, regarding her complaints and concerns.  At the meeting, McConnell stated that there would be an investigation into her concerns. Also, Plaintiff mentioned that she had sought legal representation regarding her treatment.

70.     On or around April 7, 2021, Plaintiff provided Mubea HR department, specifically HR Kirk and/or HR Ramirez, with a doctor's note specifically requesting to work from home due to her medical condition and high likelihood of contracting Covid-19.

71. On or around April 14, 2021, Plaintiff received an email to all employees notifying them that all employees who were not high risk would be returning to in-person work.

72. Later, on April 14, 2021, Plaintiff contacted Michigan Occupational Safety and Health Administration ("MIOSHA") on Mubea and its rampant sanitation issues and unsafe practices during the pandemic.

73. At no point did anyone from Mubea tell Plaintiff that she was having any performance issues or that her job was potentially in jeopardy.

74. On April 16, 2021, Plaintiff lost the ability to open or work on her files remotely. Plaintiff contacted HR Ramirez who said that no one had the ability to lock her files except the IT director in Germany. The issue was resolved, but Plaintiff was forced to work until almost 9:00 p.m. to complete her work. HR Ramirez assured Plaintiff that she was not being fired and that it had to have been some type of mistake.

75. On or around April 17, 2021, Plaintiff notified Libdeh that she had scheduled her first vaccination ad that she would be able to return to in person work two weeks after her second vaccination.

76. On the morning of April 28, 2021, MIOSHA contacted Mubea and notified them that a complaint had made against them for alleged unsanitary practices.

77. Shortly after, Mubea sent out a mass email notifying the entire office that individual desks would be cleaned and sanitized on a daily basis moving forward.

78.     Around 4:15 p.m. on April 28, 2021, after this email, Plaintiff was notified that she was being terminated. She was not provided any reasoning for her termination other than that "Mubea had decided to part ways with her."

79.     In June 2021, Plaintiff timely filed a charge of  sex, age, and disability discrimination, as well as retaliation, with the Equal Employment Opportunity Commission alleging violations of Title VII of the Civil Rights Act of 1964, as amended (Title VII), due to her age in violation of the Age Discrimination in Employment Act of 1967, as amended (ADEA), and due to her disability or perceived disability in violation the Americans with Disabilities Act of 1990, as amended. As of the date of this filing, Plaintiff has not been issued his right to sue pursuant to Title VII.  However, Plaintiff intends to amend this Complaint to add additional claims pursuant to Title VII mirroring those herein once the right to sue is issued.

## COUNT I
## MICHIGAN WHISTLEBLOWER PROTECTION ACT

80.     Plaintiff incorporates all preceding paragraphs by reference.

81.     Plaintiff reported a suspected violation of a law, regulation, or rule, promulgated by the state and federal governments, when she reported health and safety violations, or what he reasonably perceived to be violations of rules, regulations, or laws to the Michigan Occupational Safety and Health Administration (Complaint #1756731).

82.     Defendant discriminated and in fact did terminate Plaintiff for reporting a violation or perceived violation of state and federal law to a public body.

83.     As a further direct and proximate result of Defendants' wrongful acts, Plaintiff has sustained injuries and damages including but not limited to: loss of earnings and earning capacity; loss of career opportunities; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

**COUNT II**
**SEX DISCRIMINATION – FAILURE TO PROMOTE**
**ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.***

84.     All preceding paragraphs are incorporated by reference.

85.     At all relevant times, Plaintiff and Defendant were covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*.

86.     Plaintiff is a member of a protected class as a woman.

87.     Plaintiff's gender/sex was a factor that made a difference in Defendant's decision not to place her as a Program Manager.

88.     Defendant placed less qualified male counterparts as Program Managers in this position despite Plaintiff having objectively superior credentials.

89.     Defendant treated Plaintiff different than similarly situated male applicants and employees.

90.     Defendant's actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

91.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**COUNT III**
**SEX DISCRIMINATION - TERMINATION**
**ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.***

92.     All preceding paragraphs are incorporated by reference.

93.     Defendant's treated Plaintiff different than similarly situated male comparators and coworkers.

94.     Plaintiff's gender/sex was a factor that made a difference in Defendant's decision to terminate her.

95.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation,

and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

### COUNT IV
### AGE DISCRIMINATION – FAILURE TO PROMOTE
### ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.*

96.    All preceding paragraphs are incorporated by reference.

97.    At all relevant times, Plaintiff and Defendants were covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*.

98.    Plaintiff is a member of a protected class due to her age.

99.    Plaintiff's age (60+) was a factor that made a difference in Defendant's decision not to place her as a Program Manager.

100.    Defendant treated Plaintiff different than similarly situated younger job applicants.

101.    Defendant's actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

102.    As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT V
## AGE DISCRIMINATION - TERMINATION
## ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.*

103.   All preceding paragraphs are incorporated by reference.

104.   Defendant's treated Plaintiff different than similarly situated younger comparators and coworkers.

105.   Plaintiff's age was a factor that made a difference in Defendant's decision to terminate her.

106.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT VI
## RETALIATION
## ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.*

107.   All preceding paragraphs are incorporated by reference.

108.   Plaintiff engaged in protected activity when she reported actual or perceived discrimination she was being subjected to in the workplace.

109.   Plaintiff engaged in protected activity when she notified Defendant that she had filed a charge of harassment against Loutzenhiser.

110.   As a result of Plaintiff's protected activity, Plaintiff was disciplined and, ultimately, terminated.

111.   As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT VII
## DISABILITY DISCRIMINATION
## MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT 220 OF 1976, MCL 37.1602

112.   All preceding paragraphs are incorporated by reference.

113.   Plaintiff has a serious and disabling medical condition, a covered disability under the act, was perceived as having a disability and/or had a record of having a disability.

114.   Plaintiff's disability affected her ability to engage in one or more major life activities.

115.   Plaintiff was/is qualified for his former position as Senior CAD Engineer.

116.   Plaintiff's disability did not affect her ability to perform the essential functions of her position.

117.   Defendant discriminated against Plaintiff by terminating because of her disability.

118.   As a further direct and proximate result of Defendant's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to: loss of earnings and earning capacity; loss of career opportunities; loss of fringe and pension benefits; significant medical bills; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of his choice.

**COUNT VIII**
**RETALIATION**
**MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT 220 OF 1976, MCL 37.1602**

119.   All preceding paragraphs are incorporated by reference.

120.   Plaintiff engaged in protected activity when she reported actual or perceived discrimination she was being subjected to in the workplace.

121.   Plaintiff engaged in protected activity when she notified Defendant that she had filed a charge of harassment against Loutzenhiser.

122.   As a result of Plaintiff's protected activity, Plaintiff was disciplined and, ultimately, terminated.

123.   As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of vacation and sick days, loss of career opportunities, humiliation and embarrassment,

mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT IX
## TERMINATION IN VIOLATION OF PUBLIC POLICY

124.   Plaintiff incorporates all preceding paragraphs by reference.

125.   *Executive Order 2020-21*, and subsequent superseding Executive Orders, explicitly orders that "no person or entity shall operate a business or conduct operations that require workers to leave their homes or places of residence except to the extent that those workers are necessary to sustain or protect life or to conduct minimum basic operations."

126.   EO 2020-21 continues stating, "[i]n-person activities that are not necessary to sustain or protect life must be suspended until normal operations resume."

127.   EO 2020-21 also "must be construed broadly to prohibit in-person work that is not necessary to sustain or protect life." Thus, activities that can be performed at home must be performed at home.

128.   At all times relevant to this lawsuit, Plaintiff had the ability to perform all of her essential duties through telecommunication.

129.   Plaintiff successfully performed her position remotely over several months without issue or missing any deadlines.

130.   On or around March 25, 2021, Plaintiff it was requested that Plaintiff return to in person work.

131.   Plaintiff informed Defendant that she felt returning to work would be in violation of Michigan health guidelines and as she was able to perform her essential job duties remotely without issue.

132.   Plaintiff also informed Defendant that she felt they were committing several sanitation violations contrary to Michigan and Federal Health guidelines.

133.   Plaintiff was terminated approximately one month after she challenged Defendant's insistence that she return to in-person work.

134.   Plaintiff alleges that this termination was contrary to the public policy of the State of Michigan and of the United States

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.   Grant her all available compensatory damages for economic injury, including back and front pay, extreme mental and emotional distress, humiliation, outrage, economic damages, loss of employment opportunity, harm to reputation, loss of earning capacity, punitive damages, and any other damages available by law;

b.   Grant Plaintiff's reasonable attorney's fees and costs incurred in this litigation; and

c.   Grant all such further relief as shall meet equity and good conscience.

Respectfully submitted,

By:  /s/ Jack W. Schulz
Jack W. Schulz (P78078)
SCHULZ LAW PLC
*Attorney for Plaintiff*
PO Box 44855
Detroit, MI 48244
(313) 246-3590

DATE: July 16, 2021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DEBORAH PROBERT,**

                                                    Case No.

          Plaintiff,

vs.                                          Hon.

**MUBEA, INC.,**

         Defendant.

_____/

Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*

_____/

## <u>DEMAND FOR TRIAL BY JURY</u>

    Plaintiff Deborah Probert hereby demands for a trial by jury.

                         Respectfully submitted,

                         By: /s/ Jack W. Schulz
                         Jack W. Schulz (P78078)
                         SCHULZ LAW PLC
                         *Attorney for Plaintiff*
                         PO Box 44855
                         Detroit, MI 48244
                         (313) 246-3590

DATE: July 16, 2021